IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MISTY V. SINCLAIR ) <br> O/B/O S.D.C., ) <br> ) <br>       **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> MARTIN O'MALLEY,[1] ) <br> **Commissioner of the Social** ) <br> **Security Administration,** ) <br> ) <br>       **Defendant.** ) | Case No. CIV-21-077-SPS |

**OPINION AND ORDER**

The claimant, Misty V. Sinclair, on behalf of her child, S.D.C., requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining her child was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kiakazi as the Defendant in this action.

engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

### Claimant's Background

S.D.C was born on May 25, 1999, and had not yet attained age 22 at the time of the hearing before the ALJ. (Tr. 38).  S.D.C. has never engaged in substantial gainful activity. *Id*.  She has completed her high school education with the help of an individualized education program ("IEP"). (Tr. 238). Claimant asserts S.D.C is disabled due to issues with obesity; adjustment disorder with depressed mood; borderline intellectual functioning; and specific learning disability with impairment in reading. (Tr. 38).

### Procedural History

Claimant applied for child disability benefits under the Title II of the Social Security Act as well as supplemental security income under Title XVI (Tr. 33, 203, 209).  ALJ David W. Engel conducted an administrative hearing on August 17, 2018 and issued a written decision denying child disability benefits on November 5, 2018 (Tr. 33-48).  Because the ALJ failed to address Claimant's request for supplemental security income under Title XVI, the Appeals Council accepted review of the ALJ's decision and issued its own opinion denying both applications on March 13, 2020 (Tr. 12-16).  The Appeals Council's decision constitutes the Commissioner's final decision for purposes of review by this Court. 20 C.F.R. § 404.981.[3]  The Court has jurisdiction under 42 U.S.C. § 405(g).

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  At step one, the ALJ found Claimant eligible for child's insurance benefits until May 24, 2021, and determined that she had never engaged in substantial gainful activity (Tr. 38).  At step two, the ALJ determined that

---

[3] The Appeals Council adopted the findings and conclusions of the ALJ with regard to Claimant's application under Title II.  The Appeals Council also adopted the ALJ's factual findings as the basis for its decision denying Claimant's application under Title XVI.  The Court will therefore refer herein to the ALJ's written opinion as if it were the final decision of the Commissioner.

S.D.C. suffered from severe impairments, *i. e.*, obesity, adjustment disorder with depressed mood, borderline intellectual functioning, and specific learning disability with impairment in reading (Tr. 38). At step three, the ALJ that these impairments did not meet a listing (Tr. 38-41). At step four, the ALJ found that S.D.C. retained the residual functional capacity ("RFC") to perform a range of sedentary work with the following non-exertional limitations:

> she can only climb ramps or stairs occasionally, she can bend, stoop, crouch, and crawl occasionally, and she is unable to climb ropes, ladders, scaffolds, or work in environments exposed to unprotected heights and dangerous moving machinery. She can occasionally perform overhead reaching. She can occasionally use foot pedals. She can understand, remember, and carry out simple instructions and can interact with coworkers and supervisors under routine supervision.

(Tr. 41). Because Claimant had no past relevant work (Tr. 46), the ALJ proceeded to step five, where he determined that Claimant was not disabled because there were jobs she could perform existing in significant numbers in the national economy that Claimant could perform based on the testimony of a Vocational Expert ("VE") as to a hypothetical person with the S.D.C.'s age (younger), education (at least high school), work experience, and RFC. (Tr. 46-47, 78). The ALJ found. Claimant now appeals the Commissioner's decision contending, *inter alia*, that the ALJ erred by failing to properly assess the medical opinions of record. The Court agrees with this contention and the decision of the ALJ must therefore be reversed.[4]

## Review

The relevant evidence before the ALJ reflects that S.D.C. was four years old in 2003, when Claimant claimed S.D.C became disabled due to intellectual disability and obesity. (Tr. 209, 226).

---

[4] Claimant raises a number of other issues that the Court declines to address because its finding that the ALJ failed to properly medical opinions is dispositive, i. e., it affected not only the ALJ's determination of Claimant's RFC but also his conclusion as to Claimant ultimate disability at step five.

S.D.C. graduated high school and completed one year of community college. (Tr. 227, 233, 235, 238-39, 396, 484). She had no work that qualified as "past relevant work," but she worked part-time cleaning banks with her mother from 2016 to 2018. (Tr. 68-69, 617, 630, 666).

The earliest evidence in the record shows S.D.C. saw physician assistant ("PA") Julie Clark beginning in 2012 for acute medical issues such as infections. Between 2012 and 2014, PA Clark generally recorded flat affect, depressed mood, normal gait, and station with occasional lower back tenderness. (Tr. 423, 426, 429, 431, 433-34, 436, 439, 443, 445, 447). Between 2015 and 2017, S.D.C. had flat affect and depressed mood but normal gait and station without back tenderness. (Tr. 403, 407, 413, 416, 418).

Between 2015 and 2018, S.D.C. received primary care from PA Kelsey Blome, who generally recorded normal movement and normal mental status. (Tr. 335-36, 354, 361, 378, 383, 668, 675). In early 2016, S.D.C. complained of low back pain but displayed normal strength, sensation, and ability to stand on her heels and toes. (Tr. 338, 340-41). In mid-2016, S.D.C. reported a headache but exhibited normal cognitive functioning, strength, coordination, balance, range of motion, sensation, and mental status. (Tr. 347, 349). In 2017, S.D.C. displayed some mild tenderness in her back but overall normal musculoskeletal findings. (Tr. 455-56). And in 2018, S.D.C. complained of anxiety but demonstrated normal mental status. (Tr. 677, 679).

Beginning in mid-2016, S.D.C. saw Dr. Ashley Weedn and psychologist Dr. Stephen Gillaspy for weight loss. (Tr. 366-67). At intake, she said her life was mostly sedentary, though she helped with cleaning one to two hours per day. (Tr. 367). She was pleasant and cooperative, and she displayed normal range of motion and full strength (other than slightly reduced thigh strength). (Tr. 370, 373-74, 617). Through late 2017, Dr. Gillaspy's mental status examination findings were almost always within normal limits, and he had no concerns other than a sad affect

on one visit. (Tr. 611, 613-14, 633, 641-42, 651). He wrote that S.D.C. appeared to be "functioning adequately socially and academically" and consistently rated her global assessment of functioning (GAF) at 70. (Tr. 612, 614, 634, 642, 651, 652).

As noted *supra*, S.D.C graduated high school with the help of an IEP. She required special education math and basic reading classes with direct instruction. (Tr. 233-246). Accommodations included that her tests be read to her orally, exams given at a reduced length, an allowance for test retakes if the first score was not passing, extra time limits on assignments, and no requirement for oral reading. (Tr. 239-240). Her teacher of several years, Ms. Call, wrote that even with her one-on-one instruction, S.D.C's reading was a "serious" problem. (Tr. 256). Comprehending oral instructions was an "obvious" problem. *Id.* Learning new material was a "serious problem." *Id.* Ms. Call also wrote that her reading was at a fourth-grade level, her math was at a fifth-grade level, and her written language was at a third-grade level. (Tr. 255).

In April 2017, Dr. Robert Spray assessed S.D.C. on behalf of the agency. He found she possessed a full-scale IQ of 72. (Tr. 398). S.D.C.'s processing speed, verbal, and nonverbal scores were in the borderline range. *Id.* Her working memory was in the low average range. *Id.* She was diagnosed as having an adjustment disorder with depressed mood, Borderline Intellectual Functioning, and a Specific Learning Disability with impairment in reading. (Tr. 399). His interview with both S.D.C and her mother revealed she needs assistance in many basic activities, including cooking. (Tr. 397). Her mother is not sure she understands what she reads when she attempts to read books. *Id.* Claimant revealed S.D.C was about to start classes in community college, and she anticipated S.D.C would require accommodations there as well. *Id.* She anticipated S.D.C. would require a notetaker, and someone to read school texts to her. *Id.*

S.D.C. said her senior year of high school was stressful. (Tr. 613, 632). There were reported stressors and peer relations noted that had impacted her mood and motivation. (Tr. 614). She asked to be excused from class due to bullying and said she once punched a peer in the face. (Tr. 613). She noted that despite overall decrease in stress level, she experienced an emotional break which resulted in a panic attack. *Id.*

S.D.C. began her freshman year of community college in fall 2017, initially living in a dormitory with her sister. (Tr. 583, 589). She was provided an IEP for her dyslexia. (Tr. 512). With this IEP, S.D.C. achieved good grades for her first semester. *Id.* However, she began experiencing severe panic attacks. (Tr. 517, 677). In April 2018, S.D.C. reported she had been sexually assaulted at school. (Tr. 671). After this event, she reported she "went to one semester of college" but her grade point average was not high enough to continue her higher education. (Tr. 65, 487-488, 671). S.D.C. dropped out of college after spring semester 2018. (Tr. 65-66).

At the August 2018 hearing before the ALJ, S.D.C. estimated she could be on her feet only 15 to 20 minutes at a time and could sit 45 minutes at a time. (Tr. 69-70). She said she spent the day reading novels and training her dog. (Tr. 73-74). She said she could not work due to her weight and her dyslexia. (Tr. 75-76).

State agency medical and psychological consultants reviewed the record in 2017. Dr. David Coffman and Dr. Sarah Yoakam found S.D.C. has borderline intellect. (Tr. 100, 114). Dr. Gary Lindsay and Dr. William Farrell opined S.D.C. could perform simple tasks of one to two steps in a familiar setting with direct and supportive supervision; could learn new simple tasks when one-on-one oral explanations were provided; would work best in a setting with a consistent schedule; could interact appropriately with coworkers and supervisors for incidental work purposes, but

should avoid contact with the public; and could adapt to a work setting with some forewarned changes in a usually stable work setting. (Tr. 103, 117).

Claimant filed her claim in January 2017, and the ALJ analyzed the medical opinions pursuant to 20 CFR §§ 404.1527 and 416.927. *SSR* 96-6p instructs that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." These opinions are to be treated as medical opinions from non-examining sources. *Id.* Although an ALJ is not bound by a state agency psychologist's determination, he cannot ignore it and "*must* explain the weight he provides in his decision." *Id.* (emphasis added). Factors to consider are: (i) the examining relationship; (ii) the treatment relationship; (iii) supportability; (iv) consistency; (v) specialization; and (vi) other factors. 20 CFR § 404.1527(c)(1)-(6) and 20 CFR § 416.927(c)(1)-(6). Because the pertinent medical opinions here come from reviewing rather than treating physicians, the weight to be given such opinions "*will depend on the degree to which these medical opinions consider all the pertinent evidence in [a claimant's] claim.*" 20 CFR § 404.1527(c)(3); 20 CFR § 416.927(c)(3).

In the instant case, the ALJ gave little weight to the reviewing psychologists' findings but provided no explanation of how he applied the appropriate factors "If the ALJ rejects any significantly probative medical evidence concerning [Claimant's] RFC, he must provide *adequate reasons* for his decision to reject that evidence." "If the ALJ rejects any significantly probative medical evidence concerning [Claimant's] RFC, he must provide *adequate reasons* for his decision to reject that evidence." other than his findings that Claimant: (i) could handle self-care; (ii) could perform chores; (iii) attended college; and, (iv) worked with her mother (Tr. 46). This explanation fails to analyze a substantial amount of relevant evidence provided by the reviewing physicians including, *inter alia*, that S.D.C: (i) could only attend school full-time with an IEP; (ii) could only

perform chores with help; (iii) was markedly limited in the ability to understand, remember, and carry out detailed tasks; and (iv) required direct and supportive supervision. (Tr. 81, 103, 116). Such analysis by the ALJ is clearly insufficient under 20 CFR § 404.1527(c)(1)-(6) and 20 CFR § 416.927(c)(1)-(6) and provides no basis for meaningful review by this Court. *See, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 568 (10th Cir. 2009) ("If the ALJ rejects any significantly probative medical evidence concerning [Claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence.").

Because the ALJ failed to analyze the opinions of the reviewing physicians in accordance with applicable standards, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis as discussed above. If on reconsideration the ALJ finds that any changes must be made to the Claimant's RFC, he should then redetermine what work, if any, S.D.C can perform and ultimately whether she is disabled.

## Conclusion

The Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the Court finds the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**IT IS SO ORDERD this 26th day of September, 2024.**

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**